UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| INVICTUS GLOBAL SERVICES, INC., | NO. 1:21-CV-3161-TOR |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION TO REMAND |
| v. | |
| INSITU, INC., | |
| Defendant. | |

BEFORE THE COURT is Plaintiff's Motion to Remand (ECF No. 10). This matter was submitted for consideration with telephonic oral argument on March 2, 2022.  Michael B. FitzSimons argued on behalf of Plaintiff.  Michael E. Scoville argued on behalf of Defendant.  The Court has reviewed the record and files herein, considered the parties' oral arguments and is fully informed.  For the reasons discussed below, Plaintiff's Motion to Remand (ECF No. 10) is denied.

//

//

ORDER DENYING PLAINTIFF'S MOTION TO REMAND ~ 1

**BACKGROUND**

This case concerns a contract dispute where Plaintiff provided deployed unmanned aircraft systems ("UAS") operator services to Defendant in support of Defendant's defense contracts with the United States military. *See* ECF No. 1-2. On October 27, 2021, Plaintiff filed suit in the Superior Court of Klickitat County, raising breach of contract and promissory estoppel claims. *See id.* On December 10, 2021, Defendant removed the action to this Court pursuant to 28 U.S.C. § 1442(a)(1). ECF No. 1. On January 7, 2022, Plaintiff filed the present motion to remand. ECF No. 10. Defendant timely filed a response. ECF No. 12.

Defendant is a corporation that provides design, development, production, and operation support of UAS defense to the United States government and other customers. ECF Nos. 1-2 at 1, ¶ 1.2; 10-1 at 2, ¶¶ 5-6. Plaintiff provides technical and integration services to customers in the UAS industry. ECF No. 1-2 at 1, ¶ 1.1.

On January 31, 2020, the parties entered into a Memorandum of Agreement ("MoA") where Plaintiff, as a subcontractor, was to provide deployed unmanned aircraft systems operator services (also called Field Service Reps or "FSR") to Defendant. ECF No. 1-2 at 2, ¶ 3.1. The MoA was for a period of two years, beginning February 1, 2020 through January 31, 2022, with the option to extend for two additional years. ECF No. 1-2 at 3, ¶ 3.5. Plaintiff was one of three FSR subcontractors that Defendant would award "seat days" for a particular FSR

provider.  ECF No. 1-2 at 2, ¶ 3.2.  Defendant committed to awarding a minimum of 6,000 seat days to Plaintiff for each year of the contract but "actual commitments are contingent upon contracts awarded to Insitu, and Invictus' performance throughout 2020."  ECF No. 1-2 at 3, ¶¶ 3.7-3.8, at 4, ¶ 3.12.

Between 2020 and 2021, Plaintiff was awarded two prime contracts with the United States military for the Naval Air Warfare Center Aircraft Division ("NAWCAD") and the Naval Air Systems Command ("NAVAIR").  ECF No. 1-3 at 2, ¶ 4.  Both contracts bear the rating of DO-A1 under the Defense Priorities and Allocation System, making the contracts covered by the Defense Production Act. ECF No. 1-3 at 2, ¶ 5.

In March 2020, "United States authorities ordered Insitu to rapidly withdraw all Insitu and contractor personnel and case operations indefinitely at one overseas site due to concerns about COVID-19."  ECF No. 1-3 at 3, ¶ 7.  In April 2020, NAVAIR issued a formal stop work order directing Insitu to stop activity related to the task order covering operations at the overseas site in question.  *Id.*  As a result of the March and April orders, Insitu canceled four full-time FSR seat positions awarded to Plaintiff.  *Id.*  In 2021, Defendant also received orders relating to the United States military withdrawal from Afghanistan.  "The military issued multiple orders to Insitu modifying the scope of work being performed in Afghanistan, eventually stopping work for the sites where Insitu was providing UAS operational

support" which resulted in Insitu withdrawing all FSRs deployed to Afghanistan by the end of July 2021.  ECF No. 1-3 at 3, ¶ 8.  On October 15, 2021, NAVAIR terminated for convenience the task order it awarded to Insitu under Prime Contract No. N00019-17-D-0095 for UAS operational support in Afghanistan, a contract under which Plaintiff was awarded seat days.  ECF No. 1-3 at 3, ¶ 10.  The termination was to "stop work as specified," "place no further subcontracts or orders for materials, services, or facilities, except as necessary to complete the continued portion of the contract," and "terminate all subcontracts to the extent they relate to the work terminated."  *Id.*

Defendant did not fulfill the minimum 6,000 seat days committed to Plaintiff for either year in the MoA.  ECF No. 1-2 at 6, ¶¶ 4.2-4.3.

## DISCUSSION

### I.    Federal Removal Statute

The federal officer removal statute authorizes removal of a civil action brought against any person acting under an officer of the United States "for or relating to any act under color of such office."  28 U.S.C § 1442(a)(1).  "The 'basic purpose' of the statute is 'to protect the Federal Government from the interference with its operations that would ensue were a State able, for example, to arrest and bring to trial in a State court for an alleged offense against the law of the State, officers and agents of the Government acting within the scope of their authority.'"

1  *Saldana v. Glenhaven Healthcare LLC*, --- F.4d ---, 2022 WL 518989, at *2 (9th

2  Cir. Feb. 22, 2022) (quoting *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 150

3  (2007)).  While it is to be liberally construed, the statute is nonetheless limited by

4  its "language, context, history, and purposes."  *Id.*

5         The party seeking removal under the statute bears the burden of showing by

6  a preponderance of the evidence that: (1) it is a person within the meaning of the

7  statute; (2) there is a causal nexus between its actions taken pursuant to a federal

8  officer's directions and the plaintiff's claims; and (3) it can assert a colorable

9  federal defense.  *Riggs v. Airbus Helicopters, Inc.*, 939 F.3d 981, 986-87 (9th Cir.

10  2019).  Here, the parties do not dispute Defendant is a "person" within the meaning

11  of the statute.  ECF No. 10 at 4; *see also Fidelitad, Inc. v. Insitu*, 904 F.3d 1095,

12  1099 (9th Cir. 2018) ("Insitu is plainly a 'person' within the meaning of §

13  1442(a)(1).").

14     *A.  Causation*

15         To demonstrate a causal nexus, the defendant must show (1) it took actions

16  under a federal officer or took action "pursuant to a federal officer's directions"

17  and (2) the actions are causally connected to the dispute.  *Goncalves By & Through*

18  *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir.

19  2017) (recognizing this prong presents a low hurdle).  "Actions under" a federal

20  officer includes private persons who assist or carry out the duties or tasks of a

ORDER DENYING PLAINTIFF'S MOTION TO REMAND ~ 5

1    federal officer.  *Watson*, 551 U.S. at 151.  The relationship typically involves

2    "subjection, guidance, or control" but does not include mere compliance with

3    federal law, even where the regulation is highly detailed, supervised, and

4    monitored.  *Id.* at 152.  When assessing whether a causal nexus exists, courts credit

5    the defendant's theory of the case.  *Leite v. Crane Co.*, 749 F.3d 1117, 1124 (9th

6    Cir. 2014).

7          Defendant asserts that as a federal contractor, it took actions in response to

8    military orders both related to the COVID-19 pandemic and the withdrawal from

9    Afghanistan that "changed or eliminated [Plaintiff's] work."  ECF No. 12 at 13.  In

10   March 2020, "United States authorities ordered Insitu to rapidly withdraw all Insitu

11   and contractor personnel and case operations indefinitely at one overseas site due

12   to concerns about COVID-19."  ECF No. 1-3 at 3, ¶ 7.  In April 2020, NAVAIR

13   issued a formal stop work order directing Insitu to stop activity related to the task

14   order covering operations at the overseas site in question.  *Id.*  As a result of the

15   March and April orders, Insitu canceled four full-time FSR seat positions awarded

16   to Plaintiff.  *Id.*  In 2021, Defendant also received orders relating to the United

17   States military withdrawal from Afghanistan.  "The military issued multiple orders

18   to Insitu modifying the scope of work being performed in Afghanistan, eventually

19   stopping work for the sites where Insitu was providing UAS operational support"

20   which resulted in Insitu withdrawing all FSRs deployed to Afghanistan by the end

of July 2021.  ECF No. 1-3 at 3, ¶ 8.  On October 15, 2021, NAVAIR terminated

for convenience the task order it awarded to Insitu under Prime Contract No.

N00019-17-D-0095 for UAS operational support in Afghanistan.  ECF No. 1-3 at

3, ¶ 10.

It is undisputed that Defendant was directed by federal officers to modify

and stop work at various sites due to the pandemic and withdrawal from

Afghanistan.  Defendant's termination of the seat days awarded to Plaintiff were a

direct result of these orders.  While Plaintiff contends that the canceled contracts

did not account for the failure to award all 6,000 seat days for each year and the

contract was not limited to U.S. government customers, Defendant has

demonstrated that these orders made it impossible to satisfy the 6,000 seat day

commitment – Defendant would not have been able to award sufficient seat days

without government military contracts, the primary customer for the parties'

services.  ECF Nos. 1-3 at 3, ¶ 8; 12-1 at 3, ¶ 5.  In any event, the Court credits as

true Defendant's theory of the case when assessing the causal nexus.  *Leite*, 749

F.3d at 1124.  The Court finds a sufficient causal nexus exists between Defendant's

action taken pursuant to a federal officer's direction and Plaintiff's claims.  *See*

*Fidelitad*, 904 F.3d at 1099-100 (citing case for support that held "a private

contractor was acting under a federal officer when it terminated a subcontractor,

because the government directed the contract to 'halt the provision of services that were the object of its subcontract.'").

### B.  Colorable Defense

Insitu asserts that it has colorable defenses under the Defense Production Act of 1950 ("DPA"), 50. U.S.C. § 4501 *et seq.*, and the doctrine of official justification.  *See* ECF Nos. 1 at 15-20; 12 at 20-24.

Under the DPA contractor immunity provision, "[n]o person shall be held liable for damages or penalties for any act or failure to act resulting directly or indirectly from compliance with a rule, regulation, or order issued pursuant to this chapter."  50 U.S.C. § 4557.  Similarly, the common law doctrine of official justification can apply as a defense where the challenged actions were taken on the government's behalf.  *See Willingham v. Morgan*, 395 U.S. 402, 409 (1969).

Plaintiff asserts claims for Defendant's failure to meet its 6,000 seat day minimum commitment obligation for each year of the contract.  ECF No. 1-2 at 6-7, ¶¶ 4.2-5.9.  Defendant's argument that it was unable to fulfill the contract requirements due to its actions taken pursuant to a federal officer's orders, credited as true, would trigger an immunity defense.  Additionally, seat days awarded to Plaintiff were in contracts covered by the Defense Production Act.  ECF No. 1-3 at 2, ¶ 5.  The Court finds the defenses colorable.  *Leite*, 749 F.3d at 1124.  In sum,

ORDER DENYING PLAINTIFF'S MOTION TO REMAND ~ 8

Defendant has shown by a preponderance of the evidence that all elements are satisfied under the federal officer removal statute.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Plaintiff's Motion to Remand (ECF No. 10) is **DENIED**.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED March 2, 2022.



THOMAS O. RICE
United States District Judge

ORDER DENYING PLAINTIFF'S MOTION TO REMAND ~ 9